“The Government seeks summary judgment in this executrix’s suit for a refund of estate taxes that would not have been collected if the Internal Revenue Service had allowed the estate’s claim to a larger marital deduction.
“Until his death, decedent owned 2,300 acres of timberland in Georgia. Decedent’s will bequeathed to his wife ‘all of my real estate for her use and during her lifetime, and until such time as she may remarry.’ At the expiration of the widow’s life estate the real estate would pass to the decedent’s daughter for life, with a remainder in ‘all my said lands’ to decedent’s grandchildren. Internal Revenue Code § 2056 governs the marital deduction for computing the taxable value of an estate for estate tax purposes. In essence, the Code allows a deduction from the gross estate for the value of any non-terminable, noncontingent property interests that pass to the decedent’s surviving spouse. Plaintiff claimed no marital deduction for the widow’s interest in the timberland on the first estate tax return filed.
“Later, however, plaintiff claimed, as she does in this suit, that the proceeds the widow received from the sale of trees already mature at the time of decedent’s death qualify for the marital deduction. Plaintiff maintains that she can prove either (1) that these merchantable trees were an identifiable interest separately bequeathed in fee to the widow, so that the proceeds of the sale are a nonterminable bequest under § 2056, or (2) even if the trees are deemed to have been be- *534 queatbed in life estate only, that the proceeds from cutting represent the commuted value of the life estate in the fashion regarded as nonterminable in Hawaiian Trust Co. v. United States, 188 Ct. Cl. 906, 412 F. 2d 1313 (1969).
“On the first point, the plaintiff intends to show from the decedent’s ‘acts, deeds and words’ his intent to bequeath his widow the exclusive right to cut all the timber during her lifetime. Plaintiff would direct our attention to the peculiarities of timber farming in Georgia that, plaintiff contends, are consistent with this intent. Apparently, Georgia southern pine trees of the type that allegedly inhabit decedent’s woodlands grow fastest during the early years of their lives, so long as the mature trees that have reached full growth are timely cut. Future timber crops can be so badly impaired by permitting older trees to remain beyond their productive years that the courts of Georgia have imposed a duty upon life tenants in timberland to cut merchantable trees, in order to protect the interests of the remaindermen. Plaintiff asserts that decedent, however, disregarded this good forestry practice during his life, but chose instead to let old trees stand to provide turpentine. Since decedent owned the woodland in fee, there were, of course, no remaindermen to whom he owed any obligation to harvest mature trees. Plaintiff contends that she can demonstrate decedent’s awareness of this situation and his expectation that his widow would be obliged to cut the old trees immediately, so that by operation of Georgia law she would receive an outright gift of these trees. That is why, according to plaintiff, decedent bequeathed to his widow and daughter an interest in ‘real estate,’ but limited the remainder in his grandchildren to his ‘lands,’ which we are told refers to the soil alone and not the trees.
“The Government responds that decedent’s will clearly devised a life estate in both the timber and the land, which creates a terminable interest under § 2056 not entitled to the marital deduction. The Government cites several authorities that construe the term ‘land’ in an instrument of conveyance to include the timber thereon, and argues that plaintiff cannot offer evidence to alter the terms of an unambiguous will.
“The Government is quite right that in the context of this will, the term ‘my said lands’ refers to its antecedent, ‘real *535 estate.’ There is no discernible implication that the land and the trees were separately devised. Notable also is the fact that the term ‘real estate’ appears again in the will when the decedent created the second life estate for his daughter, and ‘land’ appears only in the fee remainder to the grandchildren. So, even if plaintiff were correct that this semantic distinction implies a severance of the trees from the earth, it would not be the decedent’s widow who keeps the trees but his daughter. Defendant is' further correct that plaintiff is precluded from altering the will terms. We should, nevertheless, afford plaintiff the opportunity to explain the terms of the will with whatever evidence she believes best reflects the decedent’s actual intent. Decedent’s intent will control in the end, of course, and we ought to make every effort to determine what it might have been before we grant defendant’s summary judgment.
“Plaintiff next suggests that even if the widow received only a life estate in the merchantable trees, the proceeds of the sale can be shown to be the commuted value of that estate, for which the marital deduction is allowable under Hawaiian Trust Co., supra. The widow in Hawaiian Trust Co. elected against the will to take her dower rights under state law, a life estate in one-third of the realty owned in fee by her husband during the marriage. Revenue Laws of Hawaii, 1955, § 319-1. The estate needed to sell the property in order to satisfy debts and to meet expenses, however, and a fair price could not be realized if the property were sold subject to the widow’s dower. So the widow agreed to join in the conveyance and to accept from the estate, in lieu of her dower rights, the present value of the life estate, computed in accordance with standard actuarial tables. Id. § 319-17. The IRS disallowed the marital deduction, maintaining that the widow’s dower was an ineligible, terminable interest regardless of the actual form of settlement. This court, however, held for the taxpayer on the grounds that the widow’s dower right vested at the time of decedent’s death, unlike her dower estate which could not arise until the lands were assigned to her possession. Thus, the lump sum in cash paid to the widow in lieu of a vested right, and not in exchange for any terminable estate, qualified for the marital deduction. Our decision relied on *536 United States v. Crosby, 257 F. 2d 515 (5th Cir. 1958), which had held in similar circumstances that the cash equivalent of a widow’s dower right is excludable from the taxable estate. The Crosby court stressed that the sale of property was not by the widow but by the administrators of the estate: the widow did not sell her dower interest but consented to the sale by the administrators. The amount she received was an equivalent ascertained by the court. Id. at 519.
“The plaintiff now before us does not allege that the widow exchanged her statutory rights against the estate, or that the estate sold the timber to raise needed cash, or that the value of the widow’s interest was appraised with reference to her life expectancy. On the contrary, the widow took possession of the property, made her own bargain for the sale of some timber, from which a market price emerged. All of this may well be enough to distinguish this case from the cited precedents, as the Government urges us to do. The fact that the widow took possession of the timberland as a life tenant raises another very substantial question, whether the proceeds obtained from the sale of timber were any more than the periodic income due the life tenant during possession.
“Still, plaintiff maintains that she can prove facts that will put this case within the authorities that arrive at her desired result. We cannot deny that the determination of whether a transaction represents a realization of income from property or a disposition of the property has often turned on the facts of the particular cases, at least in other areas of tax law. See, McAllister v. Commissioner, 157 F. 2d 235, 237 (2d Cir. 1946), cert. denied, 330 U.S. 826 (1947). We cannot deny that this may be the case here.
“Since we are to determine defendant’s right to summary judgment as if the facts were found most favorable to plaintiff, we cannot say that there are no facts upon which the plaintiff might prevail. Therefore, defendant’s motion for summary judgment is denied.”
On January 17, 1977 plaintiff filed a motion to dismiss endorsed “No Objection” by defendant. The petition was dismissed on January 17, 1977 under Rule 102(a) (1) (iii).